**BURDETT OXYGEN COMPANY, Plaintiff, v. KAUER, Dir. of Highways, etc. et, Defendants.**

Common Pleas Court, Franklin County.

No. 184675.   Decided March 26, 1953.

Dargusch, Caren, Greek & King, Columbus, for plaintiff.
C. William O'Neill, Atty. Genl., Columbus, for defendant.

## OPINION

By BARTLETT, J.

1. THE COURT FINDS AND DECLARES THAT THE MANIFOLDED COMPRESSION CYLINDERS OF THE PLAINTIFF, ARE NOT INHERENTLY MOTOR VEHICLE EQUIPMENT, UNDER §6293 GC, AND THE WEIGHT THEREOF, SHALL NOT BE INCLUDED IN THE DETERMINATION OF THE TOTAL WEIGHT OF THE TRAILERS OF THE PLAINTIFF, FULLY EQUIPPED, UPON WHICH SAID CYLINDERS ARE MOUNTED, FOR THE PURPOSE OF DETERMINING THE LICENSE TAX RATE TO BE PAID FOR SAID TRAILERS, UNDER §6292 GC.

2. THE DEFENDANTS ARE ORDERED TO PERMIT THE PLAINTIFF TO CONTINUE THE OPERATION OF ITS TRAILERS WITH THE LICENSE PLATES ISSUED TO IT FOR THE FISCAL YEAR ENDING APRIL 1, 1953, AND NOW DISPLAYED UPON ITS TRAILERS; AND THE DEFENDANTS ARE ORDERED TO ISSUE FUTURE LICENSE PLATES FOR SAID TRAILERS UPON THE BASIS OF THEIR WEIGHT, FULLY EQUIPPED, EXCLUDING THE WEIGHT OF SAID MANIFOLDED COMPRESSION CYLINDERS, MOUNTED ON SAID TRAILERS.

This is an action for a Declaratory Judgment. The plaintiff, The Burdett Oxygen Company, prays that this Court declare and determine, under §6293 GC, that for the purpose of determining the license tax rate to be paid by the plaintiff, under §6292 GC, the weight of the manifolded compression cylinders hereinafter referred to are not to be included in the weight of the trailers, fully equipped, upon which said manifolded compression cylinders are mounted; that the Court order the defendants to permit the plaintiff to continue the operation of its trailers with the license plates issued to it for the fiscal year ending April 1, 1953, and now displayed upon its trailers; and that the defendants be ordered to issue future license plates for said trailers upon the basis of their weight, fully equipped, excluding the weight of said manifolded compression cylinders mounted upon said trailers.

It has been stipulated and agreed by the parties that the sole issue involved, is whether the weight of the manifolded compression cylinders, including all necessary tubing, valves and gauges of the manifolding, shall be included in the weight of the trailers for license tax purposes under said §§6292 and 6293 GC; and it is conceded by the plaintiff that the flat beds, the stake-like metal framework, the steel cables, turn-buckles, H-Beams, header plates, metal box-like housing and wicket shaped bands shall be included in the weight of said trailers in determining the license tax in each trailer of the plaintiff. The defendants are the Director of Highways of Ohio, the Superintendent of the State Highway Patrol, and Robert E. Foley, the Registrar of Motor Vehicles of said state, whose duties include the enforcement and administration of the law pertaining to the registration of motor vehicles and the issuance of licenses therefor.

The case is submitted on an agreed statement of facts and oral testimony.

The plaintiff is an Ohio corporation with headquarters in Cleveland, Ohio; its principal business is the manufacture and sale of compressed gases; about 1600 compression cylinders used in the conduct of its business are manifolded together as hereinafter described and used on the 18 trailers in question; plaintiff obtained license plates for said trailers based upon their weight excluding the weight of the manifolded compression cylinders for the fiscal year ending April 1, 1952; later this Court ordered the defendant, Registrar of Motor Vehicles, to issue the license plates for said 18 trailers for the fiscal year ending April 1, 1953, on the same basis, with sufficient bond by the plaintiff for the balance of the license fee, should the Court hold later that the weight of said manifolded compres-

sion cylinders, should be included in fixing the license fee for each of said trailers; plaintiff gave the required bond and the license plates were so issued and are being displayed on said 18 trailers for the fiscal year ending April 1, 1953; plaintiff has in service some 22,000 compression oxygen cylinders and 10,000 compression cylinders used for other gases, of the same standard vertical and horizontal type, which have been included in plaintiff's personal property tax return; aside from the 1600 manifolded compression cylinders used on said trailers, some 30,000 compression cylinders are used at plaintiff's manufacturing plant and at the places of business of plaintiff's customers, such as hospitals, drug stores, foundries, etc.; these manifolded compression cylinders are ordinary standard vertical and horizontal compression cylinders connected to each other by pieces of flexible tubing, screwed onto each cylinder outlet so that all cylinders upon a single manifold, are connected into a common pipe circuit, the size of the manifold and the number of cylinders on the manifold depending upon the use to be made of the manifold; the manifolding of these cylinders is done by plaintiff at its plant, to suit the needs of its customers who require a large volume of compressed gas under high pressure connected to a single outlet, so as to avoid frequent connections and disconnections to individual cylinders; plaintiff uses commercial type tractors and two-wheel and four-wheel trailers in making deliveries of compressed gases to its customers; 80% of its business is smaller deliveries where the cylinders are unloaded from the trailers at the customers' premises, and they are replaced by discharged compression cylinders of the customers, deliveries to larger customers, being about 20% of plaintiff's business, involves the use of the 18 trailers in question. These trailers have either 26 horizontal cylinders or 150 vertical cylinders, manifolded together as hereinbefore described, so that the customer may discharge the individual cylinders within the manifold through a single outlet valve; on these large deliveries, a trailer with charged manifolded compression cylinders is placed upon the customer's premises, and a trailer with discharged cylinders is removed from his premises; these trailers are standard two-wheel and four-wheel trailer chassis designed for use with any commercial truck tractor; on the vertical cylinder trailers, said cylinders stand up-right upon the flat bed of the trailer and are held in place by a stake-like metal framework, about 3 feet high which runs along the outer edges of the flat bed and surrounds the manifolded cylinders in their upright positions, the metal frame work is tightened against the manifolded cylinder trailers by a steel cable and

turnbuckles; on the horizontal cylinder trailers, attached to the chassis are 3 or more 4 inch steel H-type cross beams, resting upon the framework of the trailer and of the same width as the trailer, forming the under part of a cradle and support the manifolded cylinders, the cylinders run lengthwise in four tiers and rest upon each other, and the H beams being held in their tiers by steel header plates affixed to the front and rear of the trailer, the header plates form the ends of the cradle, with holes through which the ends of the cylinders project, attached to the header plate at the back of the trailer is a metal box-like structure forming a housing for the manifold tubing and the control valves, the top of the cradle is formed by a wicket-shaped metal band attached to the ends of the H-type cross beam, tightened down against the cylinders by turnbuckles; a charged compression cylinder is discharged by plaintiff's customers as the compressed gas is used. The pressure maintained by the cylinder makes the gas available for commercial and industrial use by opening a valve on the compression cylinder or on the common outlet of the manifolded compression cylinders, and this pressure can be reduced for any particular purpose of the customer by the use of the reduction valves, which plaintiff furnishes its customers; the gases which plaintiff manufactures and sells are drawn from gas holders where they are stored at atmospheric pressure, and are compressed into the cylinders by high pressure four-stage compressors, and the compression cylinders are special single-purpose equipment specifically designed to maintain and withstand the high pressure essential to the storage and customary use of compressed gas for industrial, commercial, medical and other purposes; the manifolded compression cylinders in no way strengthen or reinforce the trailer, and in no way facilitate the mechanical operation or propulsion of the trailers nor increase or decrease the capacity of the trailers or the cylinders, but merely simplify the customer's method of discharging the compressed gases from the cylinders by providing a single outlet; the compressed gas industry is some 70 or 80 years old, and there is no way to furnish oxygen or other gases to its customers except in a compression cylinder (R-32-64), and the customer cannot discharge and use the gas unless it is under pressure (R-35-72-73), the primary function of the cylinder is to furnish that force and pressure (R-73-S-7C), accordingly plaintiff must sell the service of the cylinders along with the gas (R-64), the price is much less when the customer buys his own cylinders and the plaintiff merely furnishes gas to charge them (R-15-19), each cylinder retains a separate identity through-

out its life and can always be traced and distinguished from other cylinders, (registered R-5-6); cylinders are interchangable, including those manifolded upon the trucks and those not manifolded (R-14-30-S-3), manifolding is advantageous to the customers and plaintiff but has nothing to do with the transportation of the cylinders (R-11), and does not decrease or increase their capacity (S-8A), manifolding is not peculiar to the trailers in question (R-11-12-27-28), manifolds are used upon cylinders, large and small, stationary and portable, by plaintiff and its customers, inside and outside, on the ground and on the docks, in charging and discharging cylinders (R-10-14, A-1-2-3), transportation of cylinders is merely a matter of securing them in place (R-11), they must be tied down while truck in motion (R-11, 48-49, 74-75), only difference in handling cylinders, is that the manifolded ones, are not unloaded from the trailers when they reach the customer's place (R-20-21-26-25, 65-66), the manifolded compressed cylinders do their work, after, and not during the transportation (R-24-S-3C).

Under §6292 GC, the rate of license tax increases with weight of the vehicle, but the weight of the vehicle, fully equipped, must be determined in accordance with §6293 GC, the first paragraph of that section provides the measuring rod by which said weight of the vehicle shall be determined, and is as follows:

"The weight of all motor vehicles shall be the weight of the vehicle fully equipped as determined on a standard scale, except the weight of any machinery mounted upon or affixed to a motor vehicle and which is not inherently motor vehicle equipment shall not be included in the determination of the total weight."

Thus it is apparent, the vehicle weight is confined to "inherently motor vehicle equipment," and does not include the weight of the load or cargo, for license tax purposes. State ex rel. Tejan v. Lutz et al., 31 N. P. (n. s.) 473; Borden Co. v. Beightler, Director, etc., et al., Case No. 160,509, Common Pleas Court, Franklin County (unreported).

The manner of attaching the compression cylinders to the vehicle which transports them is not determinative of the character of the equipment. State, ex rel. Tejan v. Lutz et al.; supra, p. 513, 514, 516.

"Apparently the statute (6293) attaches no particular significance to the manner of affixation of the machinery as a test to determine whether it is inherently motor vehicle equipment, since it specifically eliminates any machinery either mounted or affixed to the motor vehicle provided it is not inherently motor vehicle equipment."

Borden Co. v. Beightler, Director, etc. et al. supra.

Thus the ultimate question is whether the manifolded compression cylinders are inherently motor vehicle equipment.

In the case of State. ex rel. Tejan v. Lutz et al. supra, decided in 1934, among other things it was held:

"10. When equipment, apparatus, or machinery does not assist in effectuating the purposes of a motor vehicle, but serves other purposes not inherently characteristic of a motor vehicle nor related to its operative mechanism or operative purposes, it is not subject to taxation under the motor vehicle license tax law."

At the time of the decision in the foregoing case, §6293 GC, read as follows:

"The weight of all motor vehicles, shall be the weight of the vehicle fully equipped * * *."

**Sec. 6293 GC,** in its present form was enacted in 1939, and the words, "not inherently motor vehicle equipment," found therein, appear to have their origin in the scholarly and well reasoned opinion of Judge Douglass in that case. Consequently, the tests and conclusions established then by that eminent jurist, would still appear to afford a sound basis for the interpretation of the present statute.

In delivering his opinion in that case, Douglass, J., on page 512 says:

"The Legislature having rejected rated load capacity as a basis of taxation, the placement of machinery on a truck does not change the basis of the taxation, nor the character of the machinery. Therefore, all equipment, apparatus or machinery not inherently truck equipment and not inherently an integral part of the truck, is plainly a part of the truck load. It is personal property, subject to **ad valorem** tax, not motor vehicle equipment. Transporting it does not transmute its character.

"If, therefore, it is placed on the body of a truck, it neither loses its identity as such, nor its legal status as personal property * * *."

"To determine the classification, the inquiries become then:

"First, does the apparatus become an integral part of the truck and form an addition to its structure so that it may be regarded as a part of the truck, itself?

"Second, whether permanent or detachable, is it **per se** truck equipment?

"Third, does its use indicate it to be functioning as part of the truck for truck uses, or as machinery in itself for its special use and results?

"Fourth, does it carry the truck load, or assist in doing so, or does it merely become an object transported?

"Adaptation of use of a truck to a particular form of business may require the placement of machinery and apparatus on it to perform or accomplish the work of that particular purpose or business, and in such event the rules announced by the court should enable a fundamental determination to be made. Obviously, apparatus which is usuable both on the truck and off is not, generally speaking, **per se,** truck equipment, but is rather service or trade apparatus, devise, equipment or machinery, for the particular work in which it is used. * * * The most conclusive test is the purpose or use to which it is put, and in practically all cases this test is infallible."

Douglass, J., had before him in the Tejan case, supra, several defendants and several different types of equipment invoking the determination as to whether such equipments were subject to taxation under the motor vehicle license tax law. He ruled as follows:

"12. Grinding mill and motor appurtenance thereto; hoisting winch and engine; welding machine and power plant; tar-spreading apparatus; concrete mixing equipment; **hold,** not truck equipment within purview of truck license tax law."

We are fortunate in having Douglass, J., apply his tests and rules of construction to these various types of equipment. Let us follow him in so doing, as we may profit as to their application to the manifolded compression cylinders in the instant case.

Relator, Pfeiffer, had a grinding mill on a Ford truck, operating the mill by a small tractor engine set on the truck. Douglass, J., ruled the grinding mill and its operating engine, "whether on a ground platform or truck platform, being, in fact, designed for use in a stationary position, is milling equipment not motor vehicle equipment. The fact that the owner places it upon the body of the truck and thus transports it to a farm where it is used to grind the corn or grain of the farmers does not change the character of the machinery itself. Not being designed as part of a truck nor truck equipment, its accommodation to transportation over the highways by attachment to the truck frame does not change its character in any respect. Detachment from the basic structure of the truck has no affect on its motive power, nor its grinding; nor does it lessen the motivation or purposes of the truck as such. Therefore, this grinding equipment cannot be computed as part of the weight basis for a license tax."

Apply the same construction in the instant case, surely

the compression cylinders were never designed as part of a truck nor truck equipment, since they are a standard form designed long before we had motor vehicles. Detachment from the truck will not affect their intended use of furnishing compressed oxygen to a customer nor will it affect motivation of the truck. In fact they are used much more, independent of a truck, in factories, hospitals, drug stores, etc.

The relator, Muth Bros., operate a truck with a fixed body platform; on this platform was placed a hoisting winch, a common mechanical device, generally usable anywhere and not customarily used upon a truck, held "does not change the character of the machinery nor its legal taxation classification. * * * not designed to be truck equipment, and it is, in actual fact, on a platform or off, on the ground or off, always a winch."

Certainly all these observations apply equally to the manifolded compression cylinders in question.

The relator, Weiler Welding Co. placed a welding machine on a regular platform body on its truck, held "The welding machine or apparatus, or any power plant connected with it is clearly not truck equipment." Transportation, "from place to place to accomplish its work does not convert its character into truck equipment."

Same observations apply as to compression cylinder in instant case.

Relator Tejan, has "LeBlond-Schact truck with cab and tar tank, pump, gasoline engine, motors, and a distributor. A brief description of this equipment indicates that this tank and equipment form one organized apparatus. The tank is elliptical in shape, and was not bought with the truck. It was specially built on the order of the relator by a welding company for the specific purpose of heating, hauling, and distributing tar on road surfaces. The tank is heavy sheet metal, and of a proper length to be placed on the truck frame. It has, inside along its bottom, two flues, of air-tight construction. The front end of the tank is on skids, and near this end is a tar pump, on the same skids. This pump pumps the tar from the railroad tank, and then by reverse operation by a stop-cock pumps the tar later from the tar tank onto the road. A heating system forces hot air through the flues in the tank, thus heating the tar. Running boards have been placed on the sides of the tank. An air tank and gasoline tank are placed on each side on these running boards, all on the skids. Two coil burners, using gas, produce the heat forced by proper connection into the tank flues. Connections from the tank to distributing spray bars permit the tar

pump to force the tar out for distribution on the road. Approximately seventy-five pounds pressure is required in the tar tank. Ford motors furnish direct crank-shaft drive for the pump, and are likewise·on the skids. A four inch Viking pump affords pressure against the small pipe-lines running to the syray bar." Douglass, J., ruled:

"It appears to the court that plainly this is a tar-spreading apparatus: that the tank is connected, in some manner, direct and indirect, to the other equipment. All form one operating unit, consisting of these separate and component parts.

"Analyzing and applying the tests heretofore laid down it seems plain that it is not reasonable or proper to classify this equipment as truck equipment in the purview of the law. * * *"

"The use of this particular equipment must be considered. If the tank were used solely to transport tar, and thus served a distinct and sole body purpose, without connections with a heating system, pumping and motor systems, it would be classified as a hauling body. However, the tank serves as a processing apparatus as well as a containing receptacle. The tar must be volatilized to a requisite degree, and this is done, with a resulting requisite pressure. Further, the distributor system is, in fact, part of the force system, dependent both on the pump and the volatilization of the tar in the tank.

"It appears to the Court that this complete equipment is a tar-spreading outfit, and while it does help convey the tar, there is more than conveyance accomplished. Mere conveyance could not result in the final effect, that is, uniform tar-spreading on the road surface. Therefore, since the engine, motors, air tank, gasoline tank, and pump are all connected with the tank, and since neither the apparatus nor the tank is a self-contained unit, the court regards the entire as a unit for processing, hauling, and distributing tar. It is attached to the truck frame for seasonal use, and its removal does not disturb the frame of the truck. Therefore, the court believes a rule of reasonable construction must hold that this is not truck equipment as contemplated by the Legislature. * * * "The equipment of the relator, Frank Tejan, has been distinguished both by its construction and its use from the ordinary tank car truck."

The relator, Ready Mixed Corporation, "operates a plant to make concrete mix ready for delivery to users: this plant has a daily capacity of two hundred yards of ready mixed concrete. The aggregates are mixed at the plant by a Rex 28-a motor driven mixer, and after being briefly mixed the con-

crete is discharged into Rex motormixers, for delivery to the users. These motormixers hold three cubic yards, and are mounted on Schact trucks. The company advertises that it sells concrete ready prepared at the plant, dry batching, or transit mixed concrete. The Rex motormixers may, therefore, be used to convey the concrete completely mixed, to finish mixing it, or to mix it completely in transit. It is reasonably understood that even if the purpose is to convey the completely mixed concrete some degree of rotation while the same is in process of delivery would be natural and promotive of better concrete. Here, then, is found equipment which transports the load, and may and does, through special mechanism, process the load contents at the same time. It performs one function of motor vehicle equipment in that it holds and contains the load, but, on the other hand, it is obviously a complicated mechanical device, connected and made an integral part of productive machinery. Certainly the obvious and primary purpose of this machinery is to make concrete out of the necessary component materials. A simple drum, or steel body, might serve to haul concrete ready mixed at the plant. This machinery is capable of actually making the concrete and is, at times, used for that specific purpose. It consists of a large cylinder, revolving in drum-like manner, . an engine and motor, mechanism to operate the cylinder, a charging and discharging opening and vents, and a delivery device. This is all mounted as one unit on a platform, which is attached to the truck frame or body. The cylinder is integrated with the motive power and the mechanical devices constituting the complete machine. The entire appartus is detachable and removable from the truck without any effect either on it or the truck. Every container or receptacle in which a load is placed is not necessarily a part of the truck upon which it rides. It is necessary to analyze both its inherent nature, its characteristics and its primary purpose. "This equipment is usable off the truck as well as on it, and its integral parts remain intact, constituting a complete unit when removed from the truck. It is, therefore, not motor vehicle equipment but, obviously concrete mixing equipment."

In the two cases the relators, Tejan, operated a tar-spreading outfit, including a tank to transport tar; and Ready Mixed Corporation made mixed concrete, which it transported to the users in Rex Motor mixers, both involved containers that were filled and emptied without removing the containers from the truck, and both involved the use of containers in the process of transportation; these characteristics are similar to the compression cylinders in question, which are filled and

emptied without being removed from the trailers and which serve as containers in the process of transportation.

Douglass, J., in these two cases found, however, that the primary purpose of the equipment in the one case was to spread tar upon the road, and in the other case to make mixed concrete; that, consequently, neither was inherently motor vehicle equipment; and that, therefore, neither set of equipment should be included in the weight basis on which to compute the motor vehicle license tax. By comparison the primary purpose of the compression cylinder is to furnish oxygen flow under high pressure in commercial, industrial and medical use.

It is the primary use, as distinguished from the incidental use, of equipment that determines its tax status. **Mead Paper Corp. v. Glander, 153 Oh St 539.**

The evidence, undoubtedly, shows in the instant case the use of the cylinders as a means of transportation is, at most, merely incidental; and, that really instead of assisting in the carrying of the truck load, it merely becomes an object to be transported as a part of the truck load, and not subject to taxation under the motor vehicle license tax law. The customer does not merely purchase oxygen but compressed oxygen, and the only means of making that available is by the use of the cylinders. In fact the customer purchases a cylinder of compressed air, the same as they purchase a barrel of vinegar or a keg of beer; and the ownership of the container is not significant as the custom in most cases is to put up a deposit for its return.

In the opinions of the Attorney General for 1941, No. 4029, the Attorney General, Thomas J. Herbert, later Governor, ruled that:

"The question of whether or not a demountable container placed on a truck chassis or semi-trailer, and held in place thereon by its own weight and by corner angle irons into which it fits, constitutes motor vehicle equipment, the weight of which is to be included in the total weight of the vehicle in determining the proper motor vehicle license tax, is a question of fact to be determined by the use to which such container is put."

The Attorney General referred to the case of State, ex rel. Tejan et al., supra, as the only case in Ohio of any substantial assistance.

In the opinions of the Attorney General for 1942, Attorney General Herbert again ruled:

"A framework and drawers which are placed on a truck and used to carry bakery products do not constitute motor

vehicle equipment under the provisions of §6293 **GC,** and therefore, the weight of such equipment should not be included in the total weight of the vehicle in determining the proper motor vehicle license tax."

The Attorney General observed in this ruling:

"It is apparent from the language of the foregoing statute (§6293 **GC),** that the Legislature did not intend that every piece of equipment, whether permanently or temporarily affixed, should be considered motor vehicle equipment and included in the taxable weight."

He then cites the Tejan case, supra, particularly pages 512 and 513 wherein Douglass, J., said in part:

"Obviously, apparatus which is usuable both on the truck and off is not, generally speaking, **per se,** truck equipment, but is rather service or trade apparatus device, equipment or machinery, for the particular work in which it is used."

Thereupon, the Attorney General referring to such trade equipment says:

"Such accessories are not manufactured or designed to be truck equipment."

"In the instant situation, the cabinet, tested by the foregoing rules, obviously does not constitute motor vehicle equipment. It is merely a trade accessory and serves the same practical purpose as sacks, baskets, boxes or other similar objects, which cannot be considered, by any stretch of the imagination or reason as per se motor vehicle equipment. * * * This accessory merely facilitates the handling of the bakery products. Detachment of the cabinet from the structure of the truck in no way lessens the motivation or purposes of the truck as a transportation unit. For these reasons, it appears that such cabinet does not constitute motor vehicle equipment."

All of these observations of the Attorney General, concerning such trade accessories, fit the characteristics of the manifolded compression cylinders of the plaintiff, the very purpose of the manifolding is to facilitate the use of the compression cylinders by the larger users of the compressed gases, the cylinders themselves serve the same practical purpose as barrels for vinegar or kegs of beer, and certainly such cylinders are not designed to be truck equipment, as they are a standard type, in use long before we were blessed with motor vehicles. These manifolded compression cylinders are interchangeable with those not manifolded, usable both on the trailers and off, in fact, many more are used off of trucks in the industrial and commercial world, on the ground, docks, welding shops, hospitals and drug stores; and detachment from

the trailers, in no way affects the trailers as transportation units, nor the primary use of the compression cylinders themselves.

In the case of Borden Co. v. Beightler, Director, etc., supra, an eminent member of this court of many years fine experience, Randall, J., passed on a similar question as the one in the instant case, in a well reasoned opinion, which unfortunately is unreported, being the only court opinion concerning the application of §6293 GC in its present form, to equipment mounted on motor vehicles either as inherently motor equipment or trade accessories. Randall, J., referred to Judge Douglass' "well considered case," Tejan case, supra, in which it was determined that when such equipment "does not assist in effectuating the purposes of a motor vehicle, but serves other purposes not inherently characteristic of a motor vehicle nor related to its operation, mechanism or operative purposes, its weight is not subject to taxation under the motor vehicle license tax law."

Randall, J., also observed:

"No ambiguity is presented by the words 'not inherently motor vehicle equipment' as employed in the statute. The word 'inherent' means existing as an element of original quality; naturally pertaining to a subject; permanently or inseparably existing in a subject, accordingly the word 'inherently' should be applied in concurrence with its original and accepted usage and meaning. Where there is no ambiguity there is no room for construction, since the court must consider that the legislative intention was as expressed by the plain words of the enactment. Therefore, in our opinion, it is not necessary or proper for us to consider the legislative history of §6293 GC, or the matter of legislative policy in furtherance of the principle that the greater the weight of the traffic on the highways, the greater the expense of maintenance. In our opinion, it is not necessary, therefore, to resort to any of the extrinsic aids to construction employed by courts in applying statutes where the language employed is obscure, ambiguous or uncertain in meaning."

"The function of a motor truck or vehicle is transportation of persons or goods on the public highways. Consequently any machinery which aids or facilitates this function is inherently motor vehicle equipment. Conversely, machinery which does not aid or facilitate transportation is not inherently motor vehicle equipment." * * *

"Obviously, the cooling of the inside of the truck in no way facilitates the movement of the vehicle, nor does the refrigeration equipment provide additional space for cargo. * * *" "The

functional test would seem to be the real determining factor in the question at issue." * * * "Modern science has provided an efficient and more convenient agency than ice and to impose a tax upon such an agency would be to inflict a penalty upon progress with the consequent tendency to discourage modern efficient preservation of food product." * * *

"The * * * equipment in question is not especially designed to fit into any particular truck, and the same is removable and may be practically utilized for refrigeration purposes generally not in connection with a truck. Furthermore, while the truck is not in motion or upon the public highway, the equipment in question is performing its function. Our conclusion is that the mechanized refrigeration described in the stipulation of facts is neither an integral part of the vehicle, either structurally or mechanically, and that said equipment is employed in the function of refrigeration rather than in the function of transportation."

The mechanical refrigeration described in the stipulation of facts, briefly, consists of a gas compressor, electric motor, vacuum plates, necessary tubes, hose and valves to connect the plates to the compressors. The vacuum plates are the devices that cool the inside of the truck; the plates are usually 24 inches in width, 54 inches in length and 2 5/8 inches thick; the vacuum plates are filled with a "eutectic solution, which is a gelatinous substance." When cooled it remains cold for a long period of time and its most important characteristic is its heat absorbant powers.

Counsel for the defendants stress the fact that the 10th headnote in the Tejan case, supra, covered "equipment, apparatus, or machinery," but the Legisalture has seen fit to exempt only "machinery" from the tax. This is true, but the statute qualifies the word "machinery" * * * "which is not inherently motor vehicle **equipment**" (emphasis ours), so we are at least using the words "machinery" and "equipment" from Judge Douglass' masterful application of tests and constructions. The truth would appear to be that the word "machinery" was chosen as best covering all three terms used by Judge Douglass. Among the definitions of machinery we find the following in Funk and Waganalls Practical Standard Dictionary:

"Any combination of means working together; a complex system of appliances."

Apparatus is defined by the same text as:

"A complex devise or machine, or a set of tools, appliances, etc.",

and equipment is defined as

"Whatever constitutes an outfit for some special purpose or service."

In any event, compression cylinders, the valves, gauges, manifolding and safety devises which constitute the lay-out in question, well qualify as machinery, apparatus or equipment.

This court agrees with Douglass, J., in the Tejan case, supra, that if weight on the highways alone was a determinative factor, these trailers and equipment, like the concrete motor driven mixer, might justify special classification under special legislative provision; this is true, for the further reason, that the equipment on these trailers performs one function of motor vehicle equipment in that it holds and contains the load, (product sold) but, on the other hand, is a mechanical devise, whose primary purpose is to furnish compressed gases; but the Court is of the opinion that this is not now done. The Legislature not having exercised this prerogative, however, the Court regards it beyond the duty of the Court to classify this equipment as motor vehicle equipment. As was said in the case of State, ex rel. Transportation Assn. v. Zimmerman, Secy. of State, 181 Wis. 552:

"It is not necessary in a measure of this kind that it should be the most just or scientifically exact measure, nor is it necessary that each provision of the measure should be justified in whole or in part by economic or other reasons."

But applying the fundamental tests and rules of constructions laid down by Douglass, J., in the Tejan case, Randall, J., in the Borden case, the case of Mead Corp. v. Glander, and the 1941 and 1942 opinions of the Attorney General, all supra, and considering the nature of the legislation, the intendment of the law, and the definition of terms provided in it, this Court is constrained to reach the inescapable conclusion that the manifolded compression cylinders, in question, mounted on the trailers of plaintiff, and used in not only the delivery but primarily in the use itself of compressed gases, do not constitute motor vehicle equipment, **per se,** under §6293 **GC,** and therefore, the weight of such equipment should not be included in the total weight of the trailers in determining the proper motor vehicle tax for such trailers.

The Court, therefore, finds and declares that the manifolded compression cylinders of the plaintiff, are not inherently motor vehicle equipment, under §6293 **GC,** and the weight thereof, shall not be included in the determination of the total weight of the trailers of the plaintiff, fully equipped, upon which said cylinders are mounted, for the purpose of determining the license tax rate to be paid for said trailers, **under §6292 GC.**

The defendants are ordered to permit the plaintiff to continue the operation of its trailers with the license plates issued to it for the fiscal year ending April 1, 1953, and now displayed upon its trailers; and the defendants are ordered to issue future license plates for said trailers upon the basis of their weight, fully equipped, excluding the weight of said manifolded compression cylinders, mounted on said trailers.

An entry may be drawn accordingly with exceptions reserved by counsel for the defendants.